## MEYER v. VIERECK.    (No. 8859.) *

(Court of Civil Appeals of Texas. Galveston. May 27, 1926. Rehearing Denied June 24, 1926.)

1. **Libel and slander** ⟨⟩38—**Malicious prosecution** ⟨⟩3 — **Statement to officer concerning crime is absolutely protected, but if made maliciously and without probable cause, bringing about injury to person or property, utterer is liable.**

Defamatory statement in due course of judicial proceeding or to officer concerning crime within his authority to investigate or prosecute, thereby putting court's processes in motion, is absolutely protected, without reference to utterer's motives or probable cause, but if made falsely, maliciously, and without probable cause, thereby bringing about seizure of or otherwise injuriously affecting another's person or property, he is liable for damages so caused.

2. **Libel and slander** ⟨⟩38.

Where slander charged consisted solely in defendant's statement to officers that he saw plaintiff fire first shot in difficulty leading to murder, court properly refused to submit issue to jury.

---

**3. Trial ⬥141.**

It is court's province to determine legal effect of undisputed proof on matters charged in pleadings and submit resulting fact issues, if any, to jury.

**4. Malicious prosecution ⬥3—One causing another's prosecution for murder by false statement, made with improper motive to officer, is liable for malicious prosecution.**

One causing another's arrest, incarceration, and prosecution for murder by wholly fabricating statement to state ranger as to seeing accused fire first shot in difficulty, because of ill will or other improper motive, rather than honest desire to uphold law, is liable for malicious prosecution, though he did not file complaint nor actually procure or continuously prosecute criminal cause.

**5. Malicious prosecution ⬥3—Personal ill will is not essential to liability for prosecution resulting from false statements.**

Personal ill will in making false statement leading to another's prosecution is not essential to liability for malicious prosecution; any other sinister motive, disassociated from public good and violating plaintiff's right to enjoyment of liberty and private property, being sufficient.

**6. Appeal and error ⬥218(2).**

Defendant not objecting to issue submitted nor moving to set aside findings, but moving for judgment on verdict in his favor as only proper one on testimony, cannot claim evidence insufficient on appeal, under Rev. St. 1911, arts. 1971, 1986, 1990.

**7. Malicious prosecution ⬥3 — One making statement causing prosecution held liable though he did not make complaint himself or communicate matter to one who did.**

To constitute cause of action for malicious prosecution, defendant need not have made complaint in court himself or directly communicated subject-matter to one who did, nor even have known that it would be made, if natural and probable consequences of his statement was to cause, and it did proximately cause, prosecution.

**8. Malicious prosecution ⬥64(1)—Verdict for plaintiff alleging malicious prosecution, held not to rest alone on proof of defendant's statement to officer.**

In action for malicious prosecution, evidence *held* to show prima facie that defendant's statement to state ranger as to seeing plaintiff fire first shot in difficulty leading to murder, for which he was prosecuted, was wholly false and uttered without probable cause for another purpose than honest desire to see law upheld, so that verdict for plaintiff did not rest alone on proof of such statement.

**9. Evidence ⬥75—Defendant's failure to produce evidence, showing whether legitimate inferences from plaintiff's evidence are true, may be considered in determining issue raised by plaintiff's evidence.**

When plaintiff produces evidence sufficient to raise issues as to truth of his claim, and defendant does not offer evidence in his possession showing whether or not legitimate inferences from plaintiff's evidence are true, it is fair inference that evidence withheld would confirm such inferences, and failure to produce it may be considered in determining such issue.

Appeal from District Court, Austin County; M. C. Jeffrey, Judge.

Action by Hawley Viereck against F. B. Meyer. Judgment for plaintiff in part. Defendant appeals, and plaintiff assigns cross-errors. Affirmed.

C. C. Glenn, of Sealy, and Frank Williford, Jr., and H. H. Cooper, both of Houston, for appellant.

John H. Bailey, of Cuero, and C. G. Krueger and C. D. Duncan, both of Bellville, for appellee.

GRAVES, J. In two separate counts, the one charging slander, the other malicious prosecution, the appellee sought damages in this action against the appellant as the result of the utterance against him of a statement, alleged to be defamatory, as follows:

"I saw Hawley Viereck standing on the running board of a Ford auto truck at the corner of Felcman's confectionary store and fire the first shot; I saw one of the Bell boys, the smallest one in working clothes, lurch forward."

After demurrer and a general denial, appellant specially admitted making the statement to L. Trimble, a state ranger, sent to Austin county to investigate the killing of four citizens there, on September 8, 1922, as well as subsequently to a justice court at Sealy and to the grand jury of both Austin and Bell counties, but asserted it to be wholly true, to have been so made each time without improper motive on his part in the performance of what he conceived to be his duty, and therefore to have been absolutely privileged.

At the close of all the evidence the court declined to submit any issue touching the charge of slander under the view that, as concerned that feature of the declared upon cause of action, the admitted statement was shown by the undisputed evidence to have been absolutely privileged, and submitted to a jury the following inquiries in relation to the other charge with reference to the instigation of or bringing about the prosecution:

"No. 1. Did F. B. Meyer procure, instigate, or bring about the arrest and confinement in the county jail and prosecution of Hawley Viereck on a charge of murder, in communicating to L. Trimble that he saw said Viereck standing on the running board of a Ford auto truck and fire the first shot, and one of the Bell boys lurch forward, in a certain difficulty at Sealy, Tex., on September 5, 1922, in which F. C. Schaffner and his son, Robert Schaffner, and Luther Bell and Tommy Bell lost their lives? You will answer this question yes' or no, as you find the facts to be.

"No. 2. Did F. B. Meyer see Hawley Viereck,

at the time and place alleged in the answer of the defendant, standing on the running board of a Ford auto truck and shoot the first shot, and one of the Bell boys lurch forward, as therein set out? You will answer this question yes or no, as you find the facts to be.

"No. 3. If you have answered special issue No. 1 'Yes,' and special issue No. 2 'No,' then you will answer the following: Was the said F. B. Meyer actuated by malice and without probable cause, as those terms have heretofore been defined, in procuring the arrest and confinement in the county jail and prosecution of the plaintiff, Hawley Viereck?"

On the return of answers to these and other subsidiary questions favorable to appellee, judgment went in his favor for the amount of damages found by the jury.

Both parties complain upon appeal—appellant at the rendition of any judgment against him, the appellee at the refusal of the court to submit issues to the jury for findings upon his alleged action for slander.

Here appellant, on the one hand, insists that the admitted statement, being absolutely privileged under the evidence and the court's holding as against an action for slander, was equally so against one for malicious prosecution; the appellee, on the other, that it was shown to be unprivileged as to both his claims for damages, that his recovery on the one was proper, and that the other should have gone to the jury. We think both are in error, and that the trial court not only had the correct conception of the case as made, but submitted the material fact issues to the jury, entering the proper judgment on their findings.

[1] The courts—at any rate ours in Texas, which the trial judge presumably followed—make a distinction in the rules of law governing actions grounded on the utterance of defamatory matter in due course of a judicial proceeding or to an officer concerning a crime within his authority to investigate or prosecute, according to just what the utterer does in making the statement and what proximately results from his making it in the way he does; (1) if he does no more than to merely make it and thereby put in motion the processes of the courts, whether civil or criminal, public policy protects the communication absolutely, without reference to his motives or the question of probable cause, and no civil action for defamation of character will lie; (2) but if he abuses the occasion by making the statement falsely, maliciously, and without probable cause, and thereby brings about the seizure, or other injurious affection, of the person or property of another, he may be held in such damages as he so causes. 36 Corpus Juris, p. 1259, par. 238, and footnote 48, with cited authorities; 38 Corpus Juris, pp. 392–394, pars. 18–21, and authorities cited in footnote 70 on page 393; Vogel v. Gruaz, 110 U. S. 311, 316, 4 S. Ct. 12, 28 L. Ed. 158; Hott v. Yarborough, 112 Tex. 179, 245 S. W.

676; Usher v. Skidmore, 28 Tex. 617; Johnson v. King, 64 Tex. 226.

[2] In this instance the slander the appellee charged, under the undisputed proof, resulted solely from the lodging of this statement with the officers mentioned and from its allegations as so made, because it was shown not to have been uttered elsewhere or to any other person. Therefore, being only published in privileged proceedings and the wrong in that respect alleged springing wholly out of the language used, no action was sustainable upon it, under the first of the rules referred to. Hott v. Yarborough, supra (1) at page 677 (112 Tex. 179). The trial court accordingly did not err in refusing to submit the matter to the jury, and appellee's cross-assignment presenting it must fall.

[3] For the same reason appellant's contention that he was entitled to a verdict upon the question is also untenable; it was the court's province to determine the legal effect of the undisputed proof upon the matters charged in the pleadings and submit the resulting fact issues to the jury; there being none left on this phase of the case, there was nothing to submit.

[4] As concerns the claim for malicious prosecution, however, a different situation obtains, and the other rule the cited cases declare applies.

As a result of appellant's statement to the state ranger the appellee was not only arrested, incarcerated, and prosecuted upon a charge of murder, but was forced to lose valuable time from business and expend large sums of money to extricate himself from such proceedings, all of which terminated in his favor; in other words, the seizure of his person, the deprivation of his liberty, and the injurious affection of his property was thereby brought about, and if, as the jury found, the appellant acted illegally in so starting the punitory processes of the law against him—that is, by wholly fabricating the communication from ill will, or some other improper motive, rather than from an honest desire to uphold the law of the land—he transcended his privileges, got beyond the pale of protection, and subjected himself to liability as for malicious prosecution. Usher v. Skidmore, and Hott v. Yarborough at page 678 (112 Tex. 179) both, supra. This is true because the appellee's cause of action against him for malicious prosecution, unlike that for the slander so sought to be recovered for, did not consist in the bringing or instigation of the charge, but in the injury the victim suffered from the resulting arrest, imprisonment, and subjection to trial for murder. Johnson v. King, supra, at page 230, and authorities there cited.

It is therefore no answer to the suit in this respect to argue, as the appellant very earnestly does, that he was not shown to have either filed the complaint in the criminal cause from which the consequences detailed

followed, or to have actually procured or continuously prosecuted the same; the uncontroverted proof did show, as before recited, that all these results in fact followed solely from his making his admitted statement in the first instance to the state ranger; the latter, without contradiction, so testified, as in effect did the sheriff of the county also, and it is immaterial that the formal complaint was filed by the latter; it was based alone on the information appellant so gave the state ranger. 38 Corpus Juris, pp. 394, 395, pars. 22, 23, footnotes 83 to 87, inclusive, and cited cases; Eastman v. Leiser Co., 148 Minn. 96, 181 N. W. 109.

[5] It is also true that no ground for personal ill will is shown, but that is not essential; any other sinister motive, disassociated from the public good and violative of the appellee's right to the enjoyment of his liberty and private property, would entail the same consequence; under a government of law like ours, one's individual privileges and opportunities end where his neighbor's rights begin, and he may not enter the circle so described around another unless in good faith seeking to promote the general interest or acting by virtue of its authority. 38 Corpus Juris, p. 423, par. 65, footnote 93, and cited cases; Shannon v. Jones, 76 Tex. 141, 13 S. W. 477.

As above indicated, the jury answered questions Nos. 1 and 3 yes, and No. 2 no, thus specifically determining that appellant's communication was the proximate and efficient cause of the prosecution; that it was false, malicious, and without probable cause. Under the conclusions of law stated, it but remains to be determined whether or not there was sufficient evidence to support these findings, as against the objections appellant makes to it.

[6] The appellant, although making his claim for the privileged character of his admitted statement on the averment made in his pleadings that it was true, offered no proof whatever as to that, did not testify at all himself, and presented no evidence of any sort except some of the pleadings in this cause and a subpœna for witnesses, inclusive of himself, in the criminal cause in the justice court against the appellee. His propositions, then, urging the insufficiency of the evidence to support this verdict are, in effect: (1) The verdict was supported only by proof of his own quoted statements and declarations, which were absolutely privileged—at least in so far as they constituted slander—and there were no acts and declarations showing the instigation, procurement, and continuous prosecution of a criminal cause; (2) the undisputed evidence shows that he did not begin the prosecution, or make the complaint, or previously talk with the other person who did make it, or even know that one would be made, but "only communicated certain facts to a state ranger, whose duty it was to inves-

tigate a crime, and then only upon request of such ranger, and afterwards testify in an examining court to the statements made by him; (3) there was no proof that the sums for attorney's fees the jury were permitted to consider as an element of damages were reasonable.

The cause was submitted on special issues, and a sufficient answer to all of these presentments is that appellant neither made in the court below objection to any issue nor motion to set aside any of the jury's findings on the ground of insufficient support, but did move the court to enter judgment on the verdict in his favor "because the evidence fully justified such judgment and no other proper one could have been entered on the testimony." This amounted to an affirmation that the findings did rest upon sufficient evidence, and precludes a contrary contention upon appeal. R. S., arts. 1971, 1986, 1990, and Fire Ass'n v. Moss (Tex. Civ. App.) 272 S. W. 555, with cited authorities under paragraph (1).

[7] But if this were not so, and the complaint could properly be made here, it could not be sustained. Obviously, in the first place, under our conclusions of law and the cited authorities sustaining them, these objections embody an erroneous view of what it took to constitute a cause of action for the malicious prosecution alleged; it was not indispensable for appellant himself to have made the complaint in court, or to have directly communicated the subject-matter to the person who did, or even to have known that it would be made; if the natural and probable consequence of the statement actually made by him in the circumstances shown was to cause—and it in fact did proximately cause—the prosecution that followed, enough was established.

[8] In the second place, the verdict did not rest alone upon proof of appellant's declaration, and it was not shown that he "only communicated certain facts to a state ranger and then only on request of such ranger." Upon the contrary, many witnesses testified concerning the fact questions raised by the special issues, including the appellee, and the uncontroverted purport of the evidence from all of them was to the effect that the statement made by appellant in the language and on the occasions he admitted it to have been in his pleadings was wholly false, uttered without probable cause, and under circumstances reasonably affording sufficient predicate for a legitimate inference that it was not made in furtherance merely of an honest desire to see the law of the land upheld, but to serve some other and antagonistic purpose. For instance, from the undisputed testimony of different ones of these witnesses it appeared that the first shot in the unfortunate difficulty was fired by another and different person than the appellee, that neither he nor appellant were on the scene at the time, he being inside of a back wareroom separated

from Felcman's confectionary by a partition, and appellant's whereabouts being undisclosed, but all the witnesses who testified on the point—and there were several—swearing that he was not then in the street anywhere in that neighborhood.

[9] In other words, a prima facie case in these respects was thus made out against appellant, and he, best of all men knowing whether or not what he had so published was a false accusation against his fellow countryman, failed to even take the witness stand. The principle thus stated by this court in Texas Co. v. Charles Clarke & Co., 182 S. W. 353, applies with special force:

"When a plaintiff has produced evidence sufficient to raise an issue as to the truth of his claim, and it appears from the nature of the case and the circumstances disclosed by the evidence that defendant is in possession of evidence which will show whether or not the inferences which can legitimately be drawn from plaintiff's evidence are true, and does not offer it, it is a fair and legitimate inference that the evidence so withheld by the defendant would, if produced, confirm the inferences arising from plaintiff's evidence. In such a case, the failure of defendant to produce the evidence can properly be considered in determining the issues raised by plaintiff's evidence, and for this purpose it may be said to have affirmative probative force."

To the same effect are Donoghue v. Lee (Tex. Civ. App.) 228 S. W. 960, and Vogt v. Guidry (Tex. Civ. App.) 229 S. W. 657.

To the evidence thus sufficient to support the findings of complete fabrication of and consequent lack of good faith in and probable cause for the statement, incidents and circumstances were added from which the further inference of some sinister purpose on appellant's part in making it was not unreasonable; the tragedy in which the four men lost their lives seems to have been the outgrowth of factional differences and feeling in the county, upon one side of which these circumstances—testified to by various witnesses—apparently point toward appellant's having been at least sympathetically aligned on the Bell side. During the gun battle he was seen nowhere around, witness after witness stating without contradiction that he was not in that street anywhere in that neighborhood, but immediately afterwards, when the townfolk had gathered about the dead and wounded participants, they said he appeared at the Citizens' State Bank, directly across the street from the scene; also that one Miller, a married man with a family, whose home was at Sealy where the fighting occurred after nightfall, was seen to take part in it against the Schaffners, along with other opponents, including the two Bells, and that appellant, who lived at San Felipe, a town some miles distant, took Miller home with him after the fight, where the latter spent that night. Appellant came voluntarily from his home at San Felipe before the ranger in Sealy, pursuant to long distance telephone conversation between them, and made the statement to him without compulsion or response to process; he also thereafter made the same statement before the examining justice court at Sealy, being the only witness testifying in that trial, and before the grand juries of both Austin and Bell counties, all these court appearances, however, being under process.

As before indicated, the arrest, imprisonment, and consequent damage was proven without dispute, as was the further fact that all these results were caused solely by appellant's statement to the ranger, there being no intimation in the record that any one else ever at any time made such a charge against the appellee.

Further discussion is deemed unnecessary; it follows from what has been said that the judgment should be affirmed; that order has been entered.

Affirmed.

### On Motion for Rehearing.

In our original opinion appears this statement:

"He also thereafter made the same statement before the examining justice court at Sealy, being the only witness testifying in that trial, and before the grand juries of both Austin and Bell counties, all these court appearances, however, being under process."

On rehearing, appellant challenges the correctness of this finding, in so far as it recites that he made the statement before the grand jury of Bell county, as being unsupported by the evidence. It is true that no witness testified to his having made the statement before the grand jury of Bell county, but the appellant himself in his trial answer in the cause admitted the facts to be just as the quoted recitation of our former opinion finds them.

After careful consideration of the motion for rehearing, we conclude that no sufficient reason is assigned for overturning our former judgment. The motion is therefore overruled.

Overruled.