GULF STATES THEATRES OF
TEXAS, INC., Appellant,

v.

Lloyd L. HAYES, Appellee.

No. 7626.

Court of Civil Appeals of Texas,
Beaumont.

Jan. 23, 1975.

Ross N. Sterling, Houston, for appellant.

Tobolowsky, Schlinger & Blalock, Dallas, for appellee.

KEITH, Justice.

Defendant below appeals from an adverse judgment rendered in a non-jury trial wherein plaintiff sought to recover the sums remaining due and unpaid upon an employment contract. We will refer to the parties as they appeared in the trial court.

In January, 1972, plaintiff and defendant entered into a written consultant agreement as a part of the settlement of their several business relationships. Plaintiff was retained by defendant for a period of five years "as a consultant to" defendant within the State of Texas for which he was to be paid $500 per month and defendant agreed to reimburse plaintiff for the expenses of him and his wife to theatre conventions. The contract, which did *not* contain an agreement not to compete, set out plaintiff's duties in these words:

"Hayes shall not be required to render any specific duties but shall, if called upon, recommend action which would in his judgment be beneficial to Theatre Company."

Another section provided that if Hayes should die before the end of the term, defendant would pay to his widow, or to his children if his widow did not survive him, the balance of the fees due Hayes for the remainder of the term; or, it could fund this obligation by procuring a decreasing term life insurance policy upon Hayes' life to secure the balance of the fees due upon the death of Hayes.

Defendant paid the first eight monthly payments due under the contract; but, when plaintiff became engaged in the theatre business in Orange County, Texas, in competition with defendant, it refrained from making any further payments and refused to pay the expenses plaintiff had incurred in attending conventions. Plaintiff, sought, and recovered, judgment for the present value of the past due and future payments under the contract as well as his unpaid expense accounts.

The parties are in sharp disagreement as to how the consulting agreement came into being. Plaintiff, corroborated by his counsel who negotiated the contract, swore that he demanded $800,000 for his interest in the several business deals involving defendant and its president; that when defendant offered only $750,000 therefor, the parties compromised the difference by the $30,000 consulting agreement which could be treated as an expense item by defendant for tax purposes. This was controverted by defendant's counsel who negotiated the contract. Defendant's president, Solomon, the other principal, did not testify. The trial court filed no findings of fact or conclusions of law, nor were any requested.

The thrust of defendant's single point of error is that there was a fiduciary relationship existing between plaintiff and defendant by virtue of the contract which was breached by plaintiff, thereby absolving defendant from the duty of making further payments thereunder. We disagree for the reasons now to be stated and affirm the judgment of the trial court.

■■■ There being no findings of fact and conclusions of law, the judgment implies every finding of fact that is necessary to support it. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 613 (1950). Moreover, "[i]n seeking to determine whether there is any evidence to support the judgment and the implied findings of fact incident thereto 'it is proper to consider only that evidence most favorable to the issue and to disregard entirely that which is opposed to it or contradictory in its nature.'" Id. It is likewise the duty of the appellate court to sustain the judgment of the trial court if it is correct on any theory of law applicable to the case. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73, 84 (1939). See also, Ashton v. Bennett, 503 S.W.2d 392, 393 (Tex.Civ.App.—Waco 1973, writ ref'd n. r. e.).

There was no agreement not to compete contained in the contract which we review; but, defendant seeks to justify its refusal to continue the payments due under the contract because plaintiff entered into competition with it. In Markwardt v. Harrell, 430 S.W.2d 1, 3 (Tex.Civ.App.—Eastland 1968, writ ref'd n. r. e.), the court said:

"Contracts not to compete are, by their nature, in restraint of trade and are not favorably regarded by our courts. . . . To be enforceable they must contain stated restraints. Restraints not stated in the contract cannot be established by custom or inference." (citations omitted)

See also, Texas Shop Towel, Inc. v. Haire, 246 S.W.2d 482 (Tex.Civ.App.—San Antonio 1952, no writ); Caraway v. Flagg, 277 S.W.2d 803, 805 (Tex.Civ.App.—Dallas 1955, writ ref'd n. r. e.); Note, 8 Texas L. Rev. 422, 423 (1930).

The parties could easily have inserted an agreement not to compete in the contract; but, plaintiff's testimony was to the effect that he would not have consented to its inclusion therein. Having failed to procure such an agreement by negotiation, defendant now seeks the benefit of such a contractual provision by its assertion that plaintiff was employed in a fiduciary capacity under this contract and thereby accomplish the same end result.

▉▉▉ Plaintiff's employment as a "consultant" whose only duty was "if called upon, [to] recommend action which would in his judgment be beneficial to Theatre Company" was somewhat analogous to the employment of Cain "in an advisory capacity" in the reported case of Tennessee-Louisiana Oil Company v. Cain, 400 S.W. 2d 318 (Tex.1966). There the oil company had purchased the stock which Cain owned in Fifteen Oil Company and the agreement was that Tennessee-Louisiana " 'may avail yourself [itself] of his [Cain's] special knowledge concerning the affairs and properties of Fifteen Oil Company.' " (400 S.W.2d at 321, emphasis omitted)

In language applicable to the case at bar, the Court said:

"Under the record, the defendant's [Cain's] agreement to act in an advisory capacity cannot be extended so as to prohibit the defendant from engaging in other business enterprises, nor can it be enlarged upon to the extent of qualifying him as an agent for the plaintiff in its business operations after the merger of Fifteen with the plaintiff organization." (400 S.W.2d at 325)

Defendant's reliance upon Restatement (Second) of Agency 2d § 469 (1958), and comment a thereunder is misplaced. Defendant has assumed its major premise, i. e. that plaintiff was its agent. Again, the language of *Cain* is controlling. There, in disposing of a similar contention, the Court said:

"We cannot agree that the defendant's status was that of an agent, as defined by this Court in the case of Boyd v. Eikenberry, 132 Tex. 408, 122 S.W.2d 1045, 1047 (1939):

" '[A]n agent is one who undertakes to transact some business, or to manage some affair for another, by the authority and on account of * * * it.' " (400 S.W.2d at 325)

▉▉▉ Defendant's argument that it pleaded and established a defense to plaintiff's suit is predicated upon an ingenious but specious argument which is reproduced in the margin.* The sole authority relied up-

---

* Defendant argues: "Gulf States concedes, as it must, that the face of the contract says nothing whatever about Hayes' re-entering the theatre business in competition with Gulf States. Gulf States has never said that the contract prevented Hayes from re-entering competition. Gulf States says simply that the context in which the agreement was made and the promise of Hayes to act as a consultant and recommend, if asked, beneficial

on, Restatement (Second) Trusts 2d § 2, comment b (1959), is not pertinent.

The most comprehensive definition of the word "fiduciary" by a Texas court is that formulated by Justice Critz in Kinzbach Tool Co., Inc. v. Corbett-Wallace Corporation, 138 Tex. 565, 160 S.W.2d 509, 512 (1942):

> "The term 'fiduciary' is derived from the civil law. It is impossible to give a definition of the term that is comprehensive enough to cover all cases. Generally speaking, it applies to any person who occupies a position of peculiar confidence towards another. It refers to integrity and fidelity. It contemplates fair dealing and good faith, rather than legal obligations, as the basis of the transaction. The term includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations."

See also, Cartwright v. Minton, 318 S.W.2d 449, 453 (Tex.Civ.App.—Eastland 1958, writ ref'd n. r. e.).

Applying the test set out above, the Court had little trouble finding that Turner, an employee of Kinzbach, occupied a fiduciary relationship to his employer under the facts of that case. Making a similar application of the foregoing rules to our undisputed facts—or at least to those facts which are presumed to have been found by the trial court in support of the judgment— we do not find Hayes to have had a fiduciary relationship to the defendant in this case.

No effort was made to show that plaintiff received any information of a confidential nature from defendant; that he had any obligation to refrain from opening a theatre in Orange—or for that matter,

that defendant ever until this good day had any intention of opening another theatre in Orange.

Our disposition of this case is strengthened when we bear in mind the contractual provision obligating defendant to pay all sums remaining due under the contract in the event of Hayes' untimely death. Under the record, the trial court made an implied finding that the consulting agreement was actually a part of the consideration of the sale of the business properties and not as payment for any services to be rendered by plaintiff in the future.

Defendant's single point of error is overruled and the judgment of the trial court is affirmed.

action of Gulf States, created a fiduciary relationship between the retained consultant, Hayes, and his then employer, and former employer, joint venturer and 50% owned company, Gulf States. By entering into active competition with Gulf States, Hayes became a faithless consultant or employee rendering it virtually impossible for him to fulfill his bargain and thus releasing Gulf States from any further obligation to pay."